UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| BURNS PRESCRIPTION PHARMACY, INC., | ) ) ) | |
| Plaintiff, | ) ) ) | No. 4:22-CV-1329 RLW |
| v. | ) ) | |
| EXPRESS SCRIPTS, INC., et al., | ) ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiff Burns Prescription Pharmacy, Inc.'s ("Burns")

"Notice of Ex Parte Application and Motion for Temporary Restraining Order, or in the

Alternative, Order to Show Cause Re: Preliminary Injunction." (ECF No. 11).[1] Defendants

Express Scripts, Inc. and Medco Health Solutions, Inc. (together, "Express Scripts") oppose the

Motion. (ECF No. 24).  For the reasons below, the Court will deny the Motion.

**Facts**

Burns is a full-service pharmacy located in Lancaster, California. (ECF No. 32 at ¶¶ 1, 6).

Express Scripts is a pharmacy benefits manager ("PBM") headquartered in St. Louis, Missouri. *Id*.

at ¶ 8. In 2020, Burns entered into an agreement with Express Scripts to participate in Express

---

[1] Despite its title, the Court interprets Burns' motion as a motion for a temporary restraining order only. As noted by the Eighth Circuit, a motion for a temporary restraining order and a motion for preliminary injunction are two separate and distinct requests for relief. *Tumey v. Mycroft AI, Inc.,* 27 F.4th 657, 665 (8th Cir. 2022). Thus, Burns' attempt to conflate these requests into one motion are not well taken. This Court is denying the request for temporary restraining order. Any other motion or request for relief will need to be filed separately.

Further, although Burns filed this as an ex parte motion, Express Scripts has filed an opposition to Burns' Motion. The Court reviews this Motion under Fed. R. Civ. P. 65 as a motion for temporary restraining order with notice to the opposing party.

Scripts' pharmacy network pursuant to a Pharmacy Provider Agreement ("Provider Agreement")

and the Network Provider Manual ("Provider Manual") (collectively referred to as the

"Agreement"). (ECF No 32 at ¶¶ 10-11, ECF No. 24 at p. 11). Under the Agreement, Express

Scripts agreed to collect certain receivables on Burns' behalf. (ECF No. 32 at ¶ 9). Burns, in turn,

agreed to comply with necessary audits and investigations by Express Scripts. (ECF No. 32 at ¶ 9-

11, ECF No. 24 at p. 10).

From February 2022 to June 2022, Express Scripts sent various notices and requests to

Burns as part of an investigative review of several prescriptions filled by Burns. (ECF Nos. 13-1,

13-2, 13-3, 13-4, 13-5, 13-7). On March 23, 2022, Express Scripts informed Burns by letter that

Express Scripts would begin withholding reimbursement checks "[d]ue to the discrepancies

identified, and pending the final resolution of this matter[.]" (ECF No. 13-4). On July 11, 2022,

Express Scripts notified Burns that the investigation had uncovered claim discrepancies totaling

$41,750.25. (ECF No. 13-9). Two months later, after receiving additional information from Burns,

Express Scripts informed Burns that the final discrepancy total was $20,226.80. (ECF No. 13-13).

Ultimately, on September 29, 2022, Express Scripts terminated its Provider Agreement with Burns

effective October 14, 2022. (ECF No. 13-14).

Section 4.2.c of the Provider Agreement gives Express Scripts the right to immediately

terminate a Provider Agreement upon written notice:

> [I]n the event that: … (ii) Provider submits a fraudulent prescription
> drug claim or any information in support thereof; … (iv) Provider …
> fails to comply with … any of ESI's policies and procedures
> including, but not limited to, the Provider Manual … ; (x) Provider
> (or any Pharmacy) fails to comply with any audit or investigative
> request, including the provision of information, made by ESI or any
> Sponsor or their designee, within the time period stated in such
> request; … (xii) ESI determines that Provider's continued
> performance of services poses a risk to the health, welfare or safety
> of any Member.

(ECF No. 24-2 at p. 6). The Providers Manual contains a similar provision at Section 5.11. (ECF No. 24-3 at p. 12). Section 5.9 of the Providers Manual gives Express Scripts the right to withhold reimbursement checks due to a provider when Express Scripts has "identified indicia of improper conduct[.]" (ECF No. 24-3 at 10).

**Standard of Review**

When determining whether to issue a temporary restraining order, the Court must consider four factors: (1) the likelihood the moving party will succeed on the merits, (2) the threat of irreparable harm to the moving party, (3) the balance between this harm and the injury that granting the injunction will inflict on other parties, and (4) the public interest. *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc). While the likelihood of success on the merits is the most important factor (*Roudachevski v. All-Am. Care Centers, Inc.*, 648 F.3d 701, 706 (8th Cir. 2011)), "failure to demonstrate irreparable harm is a sufficient ground to deny a preliminary injunction." *Phyllis Schlafly Rev. Trust v. Cori*, 924 F.3d 1004, 1009 (8th Cir. 2019). "Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009). The moving party bears the burden of establishing the need for a preliminary injunction. *Chlorine Institute, Inc. v. Soo Line R. R.*, 792 F.3d 903, 914 (8th Cir. 2015). Economic loss, on its own, is not an irreparable injury so long as the losses can be recovered. *DISH Network Serv. L.L.C. v. Laducer*, 725 F.3d 877, 882 (8th Cir. 2013).

**Discussion**

Burns seeks a temporary restraining order from this Court compelling Express Scripts to (1) reinstate Burns into Express Scripts' Pharmacy Provider Network within 24 hours, and (2) release withheld receivables in the amount of $99,672.54 to Burns within 72 hours. (ECF No. 11 at 2).

3

Burns contends that it complied with all of Express Scripts' requests. (ECF No. 11 at 8-11). It asserts that it provided ample documentation to disprove any allegations of wrongdoing. *Id*. According to Burns, it will "be forced to close its doors by the end of 2022" if Express Scripts' decision is allowed to stand. *Id.* at 20.

Burns purports to allege irreparable harm in that it will be forced to close its doors unless the Court intervenes. Burns argues that "[a] monetary damages remedy following trial 12 to 16 months is an inadequate legal remedy for Plaintiff and its 3000 patients who suffer from moderate to severe chronic pain and under pain management." *Id.*

The Court holds that Burns' conclusory allegations of irreparable harm are not enough to satisfy the requirements for imposition of injunctive relief. *See Alternative Med. & Pharmacy, Inc. v. Express Scripts, Inc.*, No. 4:14 CV 1469 CDP, 2014 WL 4988199, at *7 (E.D. Mo. Oct. 7, 2014). Contrary to Burns' allegations, the harm attributable to lost revenue and customers can be calculated and fully compensated by an award of money damages. *Id.* In fact, Burns seemingly acknowledges the purely economic nature of the alleged harm in its Motion:

> The termination of Plaintiff from the Provider Network and the continued withholding of $99,672.54 will cutoff Plaintiff from its bloodline. Absent the ability to cash flow its pharmacy operations, purchase and stock drugs, pay rent and make payroll, Plaintiff will be forced to close its doors by the end of 2022.

(ECF No. 11 at 19-20).

What is more, the Agreement permits Express Scripts to terminate its relationship with Burns even without cause. (ECF No. 24-2 at 6). Put another way, the contract expressly contemplates the very harm that Burns alleges. That is, the parties' arms' length negotiated bargain allows for the parties to terminate the agreement at any time. As such, the foreseeable harm resulting from termination cannot be considered "irreparable." *Id.* (citing *Med–Care Diabetic &*

*Medical Supplies, Inc. v. Strategic Health Alliance, II, Inc.*, 2014 WL 325663, at \*5 (S.D. Ohio Jan. 29, 2014) (finding no irreparable harm resulting from termination of a contract where the contract itself permitted the defendant to terminate the contract). Further, the Court will not consider the alleged harm to Burns' customers because those customers are not the moving party. *See Dataphase*, 640 F.2d at 113 (stating that courts must consider "whether the *moving party* will suffer irreparable injury) (emphasis added); *Real Time Pharmacy Servs., Inc. v. Express Scripts, Inc.*, No. 4:17CV1096 HEA at \*3 (E.D. Mo. Mar. 30, 2017) ("In the irreparable harm analysis, only harm to the plaintiffs is considered. Plaintiff's customers are not parties before the Court, so any harm to them is not considered within this factor.").[2]

### Conclusion

In sum, Burns offers nothing more than speculation to support its claim of harm beyond economic loss. Economic loss, on its own, does not constitute irreparable harm. *DISH*, 725 F.3d at 882. Failure to demonstrate irreparable harm is a sufficient basis for this Court to deny Burns' Motion. *See Phyllis Schlafly*, 924 F.3d at 1009. Therefore, the Court will deny Burns' "Notice of Ex Parte Application and Motion for Temporary Restraining Order, or in the Alternative, Order to Show Cause Re: Preliminary Injunction." (ECF No. 11).

---

[2] Even if the Court were to consider harm to consumers, Burns has not demonstrated that other pharmacies in the area could not meet the needs of those customers.

Accordingly,

**IT IS HEREBY ORDERED** that Burns' "Notice of Ex Parte Application and Motion for Temporary Restraining Order, or in the Alternative, Order to Show Cause Re: Preliminary Injunction" (ECF No. 11), which the Court interprets as a Motion for Temporary Restraining Order, is **DENIED**.

_____
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**

Dated this 15th day of December, 2022.